**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **BENJAMIN ANDREWS,** | ) |
| **as Administrator of the** | ) |
| **ESTATE OF CRAIG RICARDO ARTHURS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )**Case No.  3:21cv794** |
| | ) |
| **SHANDONG LINGLONG TYRE CO., LTD.** | ) |
| **F/K/A ZHAOYUAN LEO RUBBER CO., LTD.** | ) |
| **A/K/A SHANDONG LINGLONG** | ) |
| **RUBBER CO., LTD.,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **LINGLONG AMERICAS, INC.** | ) |
| | ) |
| **and** | ) |
| | ) |
| **HORIZON TIRE NJ, LLC** | ) |
| **D/B/A HORIZON TIRE, INC.,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **TBC CORPORATION** | ) |
| **D/B/A, TBC-TIRE AND BATTERY CORP.** | ) |
| | ) |
| **and** | ) |
| | ) |
| **TBC BRANDS, LLC** | ) |
| **D/B/A TBC-TIRE AND BATTERY CORP.** | ) |
| | ) |
| **Defendants.** | ) |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff Benjamin Andrews, as Administrator for the Estate of Craig

Ricardo Arthurs, a citizen and resident of the Commonwealth of Virginia, ("CRAIG

ARTHURS"), deceased, a Maryland citizen and resident, and sues Defendants, SHANDONG

LINGLONG TYRE CO., LTD F/K/A ZHAOYUAN LEO RUBBER CO. LTD A/K/A SHANDONG LINGLONG RUBBER CO., LTD, ("SHANDONG") a foreign corporation; LINGLONG AMERICAS, INC., ("LINGLONG") a foreign corporation; HORIZON TIRE NJ, LLC D/B/A HORIZON TIRE, INC. ("HORIZON"), a foreign corporation; TBC CORPORATION, D/B/A TBC-TIRE AND BATTERY CORPORATION ("TBC"), a foreign corporation; and TBC BRANDS, LLC, D/B/A TBC-TIRE AND BATTERY CORPORATION ("TBC BRANDS"), a foreign corporation, and alleges as follows:

## JURISDICTIONAL AND VENUE ALLEGATIONS

1.      This is an action for damages with the amount in controversy exceeding the sum of Seventy-Five Thousand Dollars ($75,000.00).

2.      This Court has diversity jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332.

3.      At all times material hereto, Plaintiff Benjamin Andrews, the Administrator for the Estate of Craig Arthurs, was and is a citizen and resident of the Commonwealth of Virginia, and the death of Craig Arthurs that is the subject of this case occurred in Spotsylvania County, Virginia.

4.      Craig Arthurs was a citizen and resident of the state of Maryland at the time of his death.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Eastern District of Virginia.

6.      Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C), because a substantial part

of the acts and omission giving rise to Plaintiff's claims occurred within the territorial bounds of the Richmond Division.

## PARTIES

7a.     At all times material hereto, Defendant SHANDONG was and is a foreign corporation headquartered in China, and incorporated in Ohio, engaged in the business of designing, manufacturing, distributing and/or selling tires, including a certain **Crosswind L780 LT 235/85R16 bearing Department of Transportation (DOT) code 0UKL LLTR 3614** (the "Subject Tire") and was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia, including Spotsylvania County, as SHANDONG LINGLONG TYRE CO., LTD, and/or ZHAOYUAN LEO RUBBER CO, and/or SHANDONG LINGLONG RUBBER CO., LTD.  This Court has personal jurisdiction, pursuant to Virginia Code § 8.01-328.1(3)(4)(5), with respect to SHANDONG because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant SHANDONG for use in the Commonwealth of Virginia, including Spotsylvania County.

7b.     At all times material hereto, Defendant LINGLONG was and is a foreign corporation headquartered in China, and incorporated in Ohio, engaged in the business of designing, manufacturing, distributing and/or selling tires, including a certain **Crosswind L780 LT 235/85R16 bearing Department of Transportation (DOT) code 0UKL LLTR 3614** (the "Subject Tire") and was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia, including Spotsylvania County, as LINGLONG AMERICAS, INC.  This Court has personal jurisdiction, pursuant to Virginia Code

3

§ 8.01-328.1(3)(4)(5), with respect to LINGLONG because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant LINGLONG for use in the Commonwealth of Virginia, including Spotsylvania County.  (Collectively "LINGLONG Defendants.")

8.     At all times material hereto, Defendant HORIZON was and is a foreign corporation headquartered and incorporated in California, engaged in the business of importing, shipping, selling and distributing tires, including the Subject Tire, and was authorized to do business in the Commonwealth of Virginia and was doing business in the Commonwealth of Virginia, including Spotsylvania County, Virginia, as HORIZON TIRE NJ, LLC and/or HORIZON TIRE, INC.  This Court has personal jurisdiction, pursuant to Virginia Code § 8.01-328.1(3)(4)(5), with respect to HORIZON because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant HORIZON for use in the Commonwealth of Virginia, including Spotsylvania County.

9a.     At all times material hereto, Defendant TBC was and is a foreign corporation headquartered in Florida, and incorporated in Delaware, engaged in the business of designing, manufacturing, distributing and/or selling tires—including the Subject Tire—and was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia, including Spotsylvania County, as TBC-TIRE AND BATTERY CORPORATION and/or TBC CORPORATION.  This Court has personal jurisdiction, pursuant to Virginia Code § 8.01-328.1(3)(4)(5), with respect to TBC because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course

of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant TBC for use in the Commonwealth of Virginia, including Spotsylvania County.

9b.    At all times material hereto, Defendant TBC BRANDS was and is a foreign corporation headquartered in Florida, and incorporated in Delaware, engaged in the business of designing, manufacturing, distributing and/or selling tires—including the Subject Tire—and was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia, including Spotsylvania County as TBC-TIRE AND BATTERY CORPORATION and/or TBC CORPORATION BRANDS GROUP.  This Court has personal jurisdiction, pursuant to Virginia Code § 8.01-328.1(3)(4)(5), with respect to TBC BRANDS because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant TBC BRANDS for use in the Commonwealth of Virginia, including Spotsylvania County.  (Collectively "TBC Defendants.")

## ALLEGATIONS COMMON TO ALL COUNTS

10.    At all times relevant, LINGLONG was the manufacturer of the Subject Tire.

11.    On or about December 1, 2006, Defendants LINGLONG and HORIZON, entered into a contract in which the HORIZON became the exclusive distributor of Crosswind tires.

12.    Prior to 2014, Defendants LINGLONG entered into a contract in which TBC Defendants would distribute Crosswind tires, manufactured by Defendants LINGLONG, in the United States.

13.    Prior to 2014, Defendants LINGLONG, through its operations in China, designed a Crosswind L780 tire size LT235/85R16 Load Range E and began manufacturing this make,

model, and size tire at Defendants' manufacturing plant located in Zhaoyuan City, Shandong Province, China for the purpose of exporting the tires to the United States.

14.     On or about August 31, 2014 – September 6, 2014, LINGLONG Defendants manufactured the Subject Tire for the purposes of exporting the Subject Tire to the United States.

15a.    Alternatively, prior to June 4, 2020, LINGLONG Defendants placed the Subject Tire into the stream of commerce and sold the Subject Tire to Defendant HORIZON for the purposes of exporting the Subject Tire by container ship into the United States.

15b.    Alternatively, prior to June 4, 2020, LINGLONG Defendants placed the Subject Tire into the stream of commerce and sold the Subject Tire to TBC Defendants for the purposes of exporting the Subject Tire by container ship into the United States.

16a.    Alternatively, prior to June 4, 2020, Defendant HORIZON imported the Subject Tire into the United States and placed the Subject Tire into the stream of commerce in the United States.

16b.    Alternatively, prior to June 4, 2020, TBC Defendants imported the Subject Tire into the United States and placed the Subject Tire into the stream of commerce in the United States.

17.     Prior to June 4, 2020, the Subject Tire was affixed to the driver's side (left) front tire position.

18.     On June 4, 2020, Mr. Arthurs was operating a 2001 Ford F350 Super Duty bearing Vehicle Identification Number (VIN) 1FTWX33F01EC99310 (the "Subject Vehicle") with the Subject Tire installed in the left front axle position while traveling northbound on I-95 in Spotsylvania, Virginia.   The Subject Vehicle was towing a flatbed trailer with three (3) vehicles loaded on the flatbed.

19.     On June 4, 2020, Mr. Arthurs was lawfully operating the Subject Vehicle northbound on I-95, north of Route 608, in Spotsylvania, Virginia.  Suddenly and without any warning, the Subject Tire's integrity failed and the tread and belt system separated from the carcass of the Subject Tire.

20.     As a direct result of the Subject Tire's failure, the Subject Vehicle lost stability and control, left its lane of travel, struck a vehicle in the inside (left) lane, collided with the guardrail, and came to final rest on its roof on top of the guardrail.

21.     Mr. Arthurs was pronounced dead at the scene of the crash.

22.     The failure of the Subject Tire's integrity, the separation of the Subject Tire's tread and belt system from its carcass, the loss of control of the Subject Vehicle, and the collision with the vehicle and guardrail were all directly and proximately caused by the defects present in the Subject Tire and the negligence of all of Defendants as set forth below.

23.     The loss of control of the Subject Vehicle, and the collision with the vehicle and the guardrail, were all directly and proximately caused by the defects present in the Subject Vehicle and the negligence of all Defendants as set forth below.

24.     At all times material hereto, the Subject Tire was defective and failed to perform as safely as an ordinary customer would expect when utilizing the Subject Vehicle and the Subject Tire in an intended and reasonably foreseeable manner.

25.     As a direct and proximate result of the defects in the Subject Tire, Mr. Arthurs was killed in the Subject Incident.

## COUNT I
## NEGLIGENCE – WRONGFUL DEATH
## (LINGLONG DEFENDANTS)

26.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

27.     At all relevant times, LINGLONG Defendants owed Plaintiff, a foreseeable user of the Subject Tire, a duty to design its tires—including the Subject Tire—in such a manner that the Subject Tire was reasonably safe for its intended uses and for its reasonable foreseeable uses.

28.     To the extent that LINGLONG Defendants did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

29.     LINGLONG Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the design of the Subject Tire:

a.     Failed to prevent excessive forces on the Subject Tire's components, which in turn led to deterioration of the Subject Tire's components and rendered it unreasonably susceptible to (and ultimately caused) the tread/belt separation that occurred on June 4, 2020;

b.     Failed to prevent excessive oxidation and degradation of the Subject Tire's components, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately caused) the tread-belt separation that occurred on June 4, 2020;

c.     Failed to ensure that the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

d.     Suffered from other deficiencies to be developed in discovery.

30.     At all relevant times, LINGLONG Defendants owed Plaintiff, a foreseeable user of the Subject Tire, a duty to manufacture, assemble, inspect and/or test its tires—including the

Subject Tire—in such a manner that the Subject Tire was fit and reasonably safe for its intended users and reasonably foreseeable uses at the time it departed LINGLONG Defendants' possession, custody, and/or control.

31.   To the extent that LINGLONG Defendants did not owe this duty under Virginia Law, it assumed such duty by virtue of its conduct.

32.   LINGLONG Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the manufacture, assembly, inspection, and/or testing of the Subject Tire:

a.   Inadequately cured/bonded the Subject Tire's tread to the remainder of the Subject Tire's carcass, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

b.   Failed to prevent excessive oxidation and degradation of the Subject Tire's components which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

c.   Failed to discover the defective, hazardous and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail to include the Subject Tire's propensity to sustain sudden, unexpected tread-belt separations, despite the fact that the Subject Tire was in LINGLONG Defendants' possession and during such time employees, servants, or agents of LINGLONG's had an opportunity to inspect, service, and work on the Subject Tire;

d.   Failed to ensure that the manufacture and assembly of the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

e.   Suffered from other deficiencies to be developed in discovery.

33.   At all relevant times, LINGLONG Defendants owed the Plaintiff, a foreseeable

user of the Subject Tire, a duty to, among other things, exercise reasonable care to warn and inform users of the dangers of the Subject Tire.

34.   To the extent that LINGLONG Defendants did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

35.   LINGLONG Defendants knew or had reason to know that the Subject Tire was likely to be dangerous for its intended and reasonably foreseeable uses.   Indeed, upon information and belief, LINGLONG Defendants had received such notice through formal and informal claims arising from substantially similar accidents, internal testing and research, and other sources of information to be developed in discovery.

36.   LINGLONG Defendants had no reason to know or believe that foreseeable users of the Subject Tire, to include Craig Arthurs, would realize the Subject Tire's dangerous condition.

37.   LINGLONG Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition and by failing to:

a.   Warn users of the unreasonably dangerous conditions relating to the Subject Tire's propensity to experience tread-belt separation, as set forth above;

b.   Warn users about tire aging, tire degradation, oxidation, and ozonation which occur as a tire ages and which make the tire more likely to fail during normal use; and

c.   Provide other such warnings as will be developed in discovery.

38.   The defects set forth above rendered the Subject Tire unsafe and unreasonably dangerous for ordinary and reasonably foreseeable uses.

39.     These unreasonably dangerous conditions and defects existed when the Subject Tire left LINGLONG Defendants' possession.

40.     The Subject Tire reached Craig Arthurs without any change in its condition from the time that it left the possession of LINGLONG Defendants.

41.     On or about the time when the accident occurred, Plaintiff was using the Subject Tire in a foreseeable manner and for its intended purpose.

42.     Moreover, the Subject Tire's defective condition proved latent.  Accordingly, Craig Arthurs was neither aware nor capable of realizing the unreasonably dangerous condition of the Subject Tire and could not have otherwise discovered the unreasonably dangerous condition even upon performing a reasonable inspection.

43.     LINGLONG Defendants' negligence directly and proximately caused the June 4, 2020 accident and the death of Craig Arthurs.

44.     As a direct and proximate result of the negligence of LINGLONG Defendants, Craig Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

     a.   Loss of support and services;

     b.   Loss of companionship;

     c.   Mental pain and suffering; and

     d.   Medical as well as funeral expenses.

Accordingly, the Plaintiff demands judgment against LINGLONG Defendants, SHANDONG LINGLONG TYRE CO., LTD F/K/A ZHAOYUAN LEO RUBBER CO. LTD A/K/A SHANDONG LINGLONG RUBBER CO., LTD.; and LINGLONG AMERICAS, INC., pursuant to Virginia Code § 8.01-50 *et seq*., for damages, together with interest and costs, and

further demand a trial by jury on all issues so triable as a matter of right.

## COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### WRONGFUL DEATH
### (LINGLONG DEFENDANTS)

45.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

46.     At all relevant times, LINGLONG Defendants was in the business of manufacturing, marketing, selling, and distributing tires—including the Subject Tire—causing Mr. Arthur's injuries and death.

47.     LINGLONG Defendants knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Vehicle) and all other reasonably foreseeable uses and misuses.

48.     At all relevant times, Mr. Arthurs used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the implied warranty of LINGLONG Defendants.

49.     LINGLONG Defendants breached the above-referenced implied warranties as to the Subject Tire.  Specifically, at the time the Subject Tire left LINGLONG Defendants' possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

a.  The Subject Tire's design was unfit as it failed to prevent excessive forces on the Subject Tire's components and deteriorating the same thus rendering the Subject Tire

unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020; and

      b.   The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020, as alleged in Paragraph 21.

      50.   Mr. Arthurs, as the operator and/or occupant of the Subject Vehicle, was a person who would foreseeably be injured by LINGLONG Defendants' breach of the implied warranty referenced in this Count.  LINGLONG Defendants' breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on June 4, 2020, and the resulting catastrophic injuries and ultimate death of Mr. Arthurs.

      51.   As a direct and proximate result of the above-referenced breaches of warranty by LINGLONG Defendants', Mr. Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

      a.   Loss of support and services;

      b.   Loss of companionship;

      c.   Mental pain and suffering; and

      d.   Medical as well as funeral expenses.

      Accordingly, Plaintiff demands judgment against SHANDONG LINGLONG TYRE CO., LTD. and LINGLONG AMERICAS, INC. for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

## COUNT III
## NEGLIGENCE– WRONGFUL DEATH
### (HORIZON TIRE NJ, LLC D/B/A HORIZON TIRE, INC.)

52.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

53.     At all relevant times, HORIZON owed Plaintiff, a foreseeable user of the Subject Tire, a duty to design its tires—including the Subject Tire—in such a manner that the Subject Tire was reasonably safe for its intended uses and for its reasonable foreseeable uses.

54.     To the extent that HORIZON did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

55.     HORIZON breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the design of the Subject Tire:

a.   Failed to prevent excessive forces on the Subject Tire's components, which in turn led to deterioration of the Subject Tire's components and rendered it unreasonably susceptible to (and ultimately caused) the tread/belt separation that occurred on June 4, 2020;

b.   Failed to prevent excessive oxidation and degradation of the Subject Tire's components, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately caused) the tread-belt separation that occurred on June 4, 2020;

c.   Failed to ensure that the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

d.   Suffered from other deficiencies to be developed in discovery.

56.     At all relevant times, HORIZON owed Plaintiff, a foreseeable user of the Subject Tire, a duty to manufacture, assemble, inspect and/or test its tires—including the Subject Tire—

in such a manner that the Subject Tire was fit and reasonably safe for its intended users and reasonably foreseeable uses at the time it departed HORIZON's possession, custody, and/or control.

57.     To the extent that HORIZON did not owe this duty under Virginia Law, it assumed such duty by virtue of its conduct.

58.     HORIZON breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the manufacture, assembly, inspection, and/or testing of the Subject Tire:

a.   Inadequately cured/bonded the Subject Tire's tread to the remainder of the Subject Tire's carcass, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

b.   Failed to prevent excessive oxidation and degradation of the Subject Tire's components which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

c.   Failed to discover the defective, hazardous and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail to include the Subject Tire's propensity to sustain sudden, unexpected tread-belt separations, despite the fact that the Subject Tire was in HORIZON's possession and during such time employees, servants, or agents of HORIZON's had an opportunity to inspect, service, and work on the Subject Tire;

d.   Failed to ensure that the manufacture and assembly of the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

e.   Suffered from other deficiencies to be developed in discovery.

59.     At all relevant times, HORIZON owed the Plaintiff, a foreseeable user of the Subject Tire, a duty to, among other things, exercise reasonable care to warn and inform users of the dangers of the Subject Tire.

60.     To the extent that HORIZON did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

61.     HORIZON knew or had reason to know that the Subject Tire was likely to be dangerous for its intended and reasonably foreseeable uses.  Indeed, upon information and belief, HORIZON had received such notice through formal and informal claims arising from substantially similar accidents, internal testing and research, and other sources of information to be developed in discovery.

62.     HORIZON had no reason to know or believe that foreseeable users of the Subject Tire, to include Craig Arthurs, would realize the Subject Tire's dangerous condition.

63.     HORIZON breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition and by failing to:

a.   Warn users of the unreasonably dangerous conditions relating to the Subject Tire's propensity to experience tread-belt separation, as set forth above;

b.   Warn users about tire aging, tire degradation, oxidation, and ozonation which occur as a tire ages and which make the tire more likely to fail during normal use; and

c.   Provide other such warnings as will be developed in discovery.

64.     The defects set forth above rendered the Subject Tire unsafe and unreasonably dangerous for ordinary and reasonably foreseeable uses.

65.     These unreasonably dangerous conditions and defects existed when the Subject Tire left HORIZON's possession.

66.     The Subject Tire reached Craig Arthurs without any change in its condition from the time that it left the possession of HORIZON.

67.     On or about the time when the accident occurred, Plaintiff was using the Subject Tire in a foreseeable manner and for its intended purpose.

68.     Moreover, the Subject Tire's defective condition proved latent.  Accordingly, Craig Arthurs was neither aware nor capable of realizing the unreasonably dangerous condition of the Subject Tire and could not have otherwise discovered the unreasonably dangerous condition even upon performing a reasonable inspection.

69.     HORIZON's negligence directly and proximately caused the June 4, 2020 accident and the death of Craig Arthurs.

70.     As a direct and proximate result of the negligence of Defendant HORIZON, Craig Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

     a.  Loss of support and services;

     b.  Loss of companionship;

     c.  Mental pain and suffering; and

     d.  Medical as well as funeral expenses.

Accordingly, the Plaintiff demands judgment against Defendant TIRE NJ, LLC D/B/A HORIZON TIRE, INC., pursuant to Virginia Code § 8.01-50 *et seq*., for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
## WRONGFUL DEATH
## (HORIZON TIRE NJ, LLC D/B/A HORIZON TIRE, INC.)

71.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

72.     At all relevant times, HORIZON was in the business of manufacturing, marketing, selling, and distributing tires—including the Subject Tire—causing Mr. Arthur's injuries and death.

73.     HORIZON knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Vehicle) and all other reasonably foreseeable uses and misuses.

74.     At all relevant times, Mr. Arthurs used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on implied warranty of HORIZON.

75.     HORIZON breached the above-referenced implied warranties as to the Subject Tire.  Specifically, at the time the Subject Tire left HORIZON's possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

        a.  The Subject Tire's design was unfit as it failed to prevent excessive forces on the Subject Tire's components and deteriorating the same thus rendering the Subject Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020; and

b.   The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020, as alleged in Paragraph 21.

76.   Mr. Arthurs, as the operator and/or occupant of the Subject Vehicle, was a person who would foreseeably be injured by HORIZON's breach of the implied warranty referenced in this Count.  HORIZON's breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on June 4, 2020, and the resulting catastrophic injuries and ultimate death of Mr. Arthurs.

77.   As a direct and proximate result of the above-referenced breaches of warranty by HORIZON, Mr. Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

a.   Loss of support and services;

b.   Loss of companionship;

c.   Mental pain and suffering; and

d.   Medical as well as funeral expenses.

Accordingly, Plaintiff demands judgment against HORIZON for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT V**
**NEGLIGENCE – WRONGFUL DEATH**
**(TBC DEFENDANTS)**

78.   Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

79.     At all relevant times, TBC Defendants owed Plaintiff, a foreseeable user of the Subject Tire, a duty to design its tires—including the Subject Tire—in such a manner that the Subject Tire was reasonably safe for its intended uses and for its reasonable foreseeable uses.

80.     To the extent that TBC Defendants did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

81.     TBC Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the design of the Subject Tire:

a.     Failed to prevent excessive forces on the Subject Tire's components, which in turn led to deterioration of the Subject Tire's components and rendered it unreasonably susceptible to (and ultimately caused) the tread/belt separation that occurred on June 4, 2020;

b.     Failed to prevent excessive oxidation and degradation of the Subject Tire's components, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately caused) the tread-belt separation that occurred on June 4, 2020;

c.     Failed to ensure that the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

d.     Suffered from other deficiencies to be developed in discovery.

82.     At all relevant times, TBC Defendants owed Plaintiff, a foreseeable user of the Subject Tire, a duty to manufacture, assemble, inspect and/or test its tires—including the Subject Tire—in such a manner that the Subject Tire was fit and reasonably safe for its intended users and reasonably foreseeable uses at the time it departed TBC Defendants' possession, custody, and/or control.

83.     To the extent that TBC Defendants did not owe this duty under Virginia Law, it assumed such duty by virtue of its conduct.

84.     TBC Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition in that the manufacture, assembly, inspection, and/or testing of the Subject Tire:

a.   Inadequately cured/bonded the Subject Tire's tread to the remainder of the Subject Tire's carcass, which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

b.   Failed to prevent excessive oxidation and degradation of the Subject Tire's components which in turn rendered the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 4, 2020;

c.   Failed to discover the defective, hazardous and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail to include the Subject Tire's propensity to sustain sudden, unexpected tread-belt separations, despite the fact that the Subject Tire was in TBC Defendants' possession and during such time employees, servants, or agents of TBC Defendants had an opportunity to inspect, service, and work on the Subject Tire;

d.   Failed to ensure that the manufacture and assembly of the Subject Tire was robust enough for its intended and reasonably foreseeable use as a tire; and

e.   Suffered from other deficiencies to be developed in discovery.

85.     At all relevant times, TBC Defendants owed the Plaintiff, a foreseeable user of the Subject Tire, a duty to, among other things, exercise reasonable care to warn and inform users of the dangers of the Subject Tire.

86.     To the extent that TBC Defendants did not owe this duty under Virginia law, it assumed such duty by virtue of its conduct.

87.     TBC Defendants knew or had reason to know that the Subject Tire was likely to be dangerous for its intended and reasonably foreseeable uses.  Indeed, upon information and belief, TBC Defendants had received such notice through formal and informal claims arising from substantially similar accidents, internal testing and research, and other sources of information to be developed in discovery.

88.     TBC Defendants had no reason to know or believe that foreseeable users of the Subject Tire, to include Craig Arthurs, would realize the Subject Tire's dangerous condition.

89.     TBC Defendants breached the above-cited duties by placing the Subject Tire into the stream of commerce in a defective and unreasonably dangerous condition and by failing to:

a.   Warn users of the unreasonably dangerous conditions relating to the Subject Tire's propensity to experience tread-belt separation, as set forth above;

b.   Warn users about tire aging, tire degradation, oxidation, and ozonation which occur as a tire ages and which make the tire more likely to fail during normal use; and

c.   Provide other such warnings as will be developed in discovery.

90.     The defects set forth above rendered the Subject Tire unsafe and unreasonably dangerous for ordinary and reasonably foreseeable uses.

91.     These unreasonably dangerous conditions and defects existed when the Subject Tire left TBC Defendants' possession.

92.     The Subject Tire reached Craig Arthurs without any change in its condition from the time that it left the possession of TBC Defendants.

93.     On or about the time when the accident occurred, Plaintiff was using the Subject Tire in a foreseeable manner and for its intended purpose.

94.     Moreover, the Subject Tire's defective condition proved latent.  Accordingly, Craig Arthurs was neither aware nor capable of realizing the unreasonably dangerous condition of the Subject Tire and could not have otherwise discovered the unreasonably dangerous condition even upon performing a reasonable inspection.

95.     TBC Defendants' negligence directly and proximately caused the June 4, 2020 accident and the death of Craig Arthurs.

96.     As a direct and proximate result of the negligence of Defendant TBC Defendants, Craig Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

    a.   Loss of support and services;

    b.   Loss of companionship;

    c.   Mental pain and suffering; and

    d.   Medical as well as funeral expenses.

Accordingly,   Plaintiff   demands   judgment   against   TBC   Defendants,   TBC CORPORATION, D/B/A TBC-TIRE AND BATTERY CORPORATION; and TBC BRANDS, LLC, D/B/A TBC-TIRE AND BATTERY CORPORATION, pursuant to Virginia Code § 8.01-50 *et seq*., for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

<u>COUNT VI</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**WRONGFUL DEATH**
**(TBC DEFENDANTS)**

97.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

98.     At all relevant times, TBC Defendants were in the business of manufacturing marketing, selling, and distributing tires—including the Subject Tire—causing Mr. Arthur's injuries and death.

99.     TBC Defendants knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Vehicle) and all other reasonably foreseeable uses and misuses.

100.     At all relevant times, Mr. Arthurs used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the implied warranty of TBC Defendants.

101.     TBC Defendants breached the above-referenced implied warranties as to the Subject Tire.  Specifically, at the time the Subject Tire left TBC Defendants' possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

    a.  The Subject Tire's design was unfit as it failed to prevent excessive forces on the Subject Tire's components and deteriorating the same thus rendering the Subject Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020; and

b.   The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 4, 2020, as alleged in Paragraph 21.

102.   Mr. Arthurs, as the operator and/or occupant of the Subject Vehicle, was a person who would foreseeably be injured by TBC Defendants' breach of the implied warranty referenced in this Count.  TBC Defendants' breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on June 4, 2020, and the resulting catastrophic injuries and ultimate death of Mr. Arthurs.

103.   As a direct and proximate result of the above-referenced breaches of warranty by TBC Defendants, Mr. Arthurs was killed in the Subject Incident on June 4, 2020, and his beneficiaries have suffered, are suffering, and will suffer in the future the following damages:

a.   Loss of support and services;

b.   Loss of companionship;

c.   Mental pain and suffering; and

d.   Medical as well as funeral expenses.

Accordingly, Plaintiff demands judgment against TBC Defendants TBC Defendants, TBC CORPORATION, D/B/A TBC-TIRE AND BATTERY CORPORATION; and TBC BRANDS, LLC, D/B/A TBC-TIRE AND BATTERY CORPORATION, for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,
BENJAMIN ANDREWS


_____/s/_____
Jonathan E. Halperin (VSB No. 32698)
Andrew Lucchetti (VSB No. 86631)
Darrell Getman (VSB No. 95791)
Halperin Law Center, LLC
4435 Waterfront Drive, Suite 100
Glen Allen, VA  23060
Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
andrew@hlc.law
darrell@hlc.law
*Counsel for Plaintiff*