IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BENJAMIN ANDREWS,
*as Administrator of the estate of*
*Craig Ricardo Arthurs*,
     Plaintiff,

     v.                            Civil No. 3:21cv794 (DJN)

SHANDONG LINGLONG
TYRE CO., LTD. *et al.*,
     Defendants.

## **MEMORANDUM OPINION**

Plaintiff Benjamin Andrews, as Administrator of the Estate of Craig Ricardo Arthurs, brings this action against Defendants Shandong Linglong Tyre Co., LTD, formerly known as Zhaoyuan Leo Rubber Co. LTD and also known as Shandong Linglong Rubber Co., LTD ("Shandong"), Linglong Americas Inc., ("Linglong"), Horizon Tire NJ, LLC, doing business as Horizon Tire Inc. ("Horizon"), TBC Corporation, doing business as TBC-Tire and Battery Corporation ("TBC"), and TBC Brands, LLC, doing business as TBC-Tire And Battery Corporation ("TBC Brands"), alleging wrongful death under the theories of negligence and breach of the implied warranty of merchantability. This matter now comes before the Court on Linglong's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure (ECF No. 24) and Plaintiff's Motion for Jurisdictional Discovery (ECF No. 31). For the reasons set forth below, the Court will GRANT Linglong's Motion to Dismiss and DENY Plaintiff's Motion for Jurisdictional Discovery.

# I.   BACKGROUND

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiff's proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted). Based on these standards, the Court accepts the following facts.

## A.   Factual Background

On June 4, 2020, Craig Arthurs, a Maryland citizen and truck driver for Divaz Towing, LLC, was towing a loaded trailer through Spotsylvania, Virginia on I-95 when the integrity of the front left tire on the company's truck suddenly failed. (Compl. ¶¶ 18-19 (ECF No. 1); Resp. Opp'n Linglong Mot. at 1 (ECF No. 27).) When the tire failed, Mr. Arthurs' vehicle lost

stability and control, struck another vehicle, and ultimately collided with a guardrail.  (Compl. ¶ 20.)  As a result, Mr. Arthurs lost his life.  (Compl. ¶ 21.)

Defendant Shandong, headquartered in China and incorporated in Ohio, manufactured the tire at issue (the "Subject Tire"), a Crosswind 780 LT 235/85R16 bearing a Department of Transportation ("DOT") code 0UKL LLTR 3614.  (Compl. ¶ 7a.)  Shandong manufactured the Crosswind 780 LT 235/85R16 line of tires in Zhaoyuan City, Shandong Province, China.  (Compl. ¶ 13.)  It manufactured the Subject Tire on or about August 31, 2014, to September 6, 2014, "for the purposes of exporting the Subject Tire *to the United States*."[1]  (Compl. ¶ 14 (emphasis added).)

Moving Defendant Linglong, a corporate affiliate of Shandong, maintains its principal place of business in Ohio, where it was incorporated on March 24, 2014.  (Decl. of Pingshan Li ("Li Decl.") ¶¶ 4-6 (ECF No. 25-1).)[2]  Linglong is not registered, certified, or licensed to do business in Virginia.  (Li Decl. ¶ 8.)  Linglong does not have, and has never maintained, offices in the state of Virginia.  (Li Decl. ¶ 7.)  Nor does Linglong own or lease properties, facilities, or offices in Virginia, have assets located there, or have a Virginia phone number.  (Li Decl. ¶¶ 9-11.)  Additionally, regarding the Crosswind 780 LT 235/85R16 line of tires, Linglong did not do any business in Virginia related to any Crosswind L780 tire that was imported into the United States in 2014, and did not send its employees to Virginia on business related to any such tire.

---

[1]     In conflating Shandong and Linglong throughout his Complaint as the "Linglong Defendants," Plaintiff originally included Linglong in its manufacturing allegation.  (*See* Compl. ¶ 14 ("LINGLONG Defendants manufactured the Subject Tire . . . .").)  However, following Linglong's Motion and evidence submitted in its Declaration, Plaintiff concedes that Shandong, not Linglong, manufactured the Subject Tire.  (*See* Resp. Opp'n Linglong Mot. at 2 ("The tire at issue . . . was manufactured by a Chinese company called Shandong.").)

[2]     Mr. Li, an attorney and original incorporator of Linglong, serves as its acting secretary and authorized corporate representative.  (Li Decl. ¶¶ 2-3.)

(Li. Decl. ¶ 12.)  From Linglong's incorporation on March 24, 2014, through the end of 2014, Linglong "was outside any stream of commerce that brought Crosswind L 780 tires into the United States generally, or Virginia specifically."  (Li Decl. ¶¶ 13-16.)  Sometime before June 4, 2020, Linglong "placed the Subject Tire into the stream of commerce" and sold it to either Defendant Horizon or the "TBC Defendants" for "the purposes of exporting the Subject Tire by container ship *into the United States*."  (Compl. ¶¶ 15a-15b (emphasis added).)

### B.   Plaintiff's Complaint

On December 17, 2021, Plaintiff filed his Complaint raising six wrongful death claims based on the above allegations.  Counts One, Three and Five proceed on a products liability theory of negligence against the "Linglong Defendants," Horizon, and the "TBC Defendants" respectively.  (Compl. ¶¶ 26-44, 52-70, 78-96.)  Counts Two, Four and Six proceed on the theory of breach of the implied warranty of merchantability, also against the "Linglong Defendants," Horizon and the "TBC Defendants" respectively.  (Compl. ¶¶ 45-51, 71-77, 97-103.)  Based on these claims, Plaintiff seeks unspecified damages, interest and costs.

### C.   Linglong's Motion to Dismiss

In response to the Complaint, on April 6, 2022, Linglong filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  (ECF No. 24.)  Linglong argues that Plaintiff cannot establish that this Court has general or specific personal jurisdiction over Linglong.  (Mem. Supp. Linglong Mot. at 2-5 (ECF No. 25).)  Specifically, Linglong contends that Plaintiff "has failed to allege and cannot plausibly allege" that Linglong (1) proves "at home" in Virginia for jurisdictional purposes, (2) purposefully availed itself of the privilege of doing business in Virginia, or (3) has any legally sufficient connection between its purported Virginia contacts and this dispute.  (Mem. Supp. Linglong Mot. at 2-5.)  Indeed,

4

Linglong asserts that "it did not even distribute the [Subject Tire] at the time, certainly did not do so in Virginia, and had no employees or operations in the state." (Reply Linglong Mot at 2-3 (ECF No. 29).) In support of its Motion to Dismiss, Linglong attached a Declaration by Pingshan Li, who described Linglong's lack of contacts with Virginia and/or the Subject Tire.

Plaintiff responded to Linglong's Motion on April 19, 2022, requesting that the Court continue its ruling on Linglong's Motion to Dismiss and grant Plaintiff the opportunity to conduct jurisdictional discovery. (Resp. Opp'n Linglong Mot. at 1.) Plaintiff argues that the Complaint establishes a prima facie showing of personal jurisdiction in alleging that Linglong "was doing business throughout the Commonwealth of Virginia" and that Mr. Arthurs suffered injuries in Virginia while using a product "that was designed, serviced, marketed, imported, distributed and/or manufactured by [Linglong] for use in the Commonwealth of Virginia, including Spotsylvania, County." (Resp. Opp'n Linglong Mot. at 4 (quoting Compl. ¶ 7b) (cleaned up).) Plaintiff argues that these contacts subject Linglong to specific personal jurisdiction, conceding that general jurisdiction does not apply. (Resp. Opp'n Linglong Mot. at 5.) Additionally, Plaintiff attacks the Li Declaration for cabining its averments to Linglong's activities during 2014, arguing it "comes nowhere close to extinguishing the likelihood that this Court may exercise personal jurisdiction over [Linglong.]" (Resp. Opp'n Linglong Mot. at 3.) Plaintiff does not dispute the validity of the Li Declaration or proffer its own evidence supporting personal jurisdiction.

On April 25, 2022, Linglong filed its Reply (ECF No. 29), rendering its Motion to Dismiss ripe for review.

### D.     Plaintiff's Motion for Jurisdictional Discovery

On April 29, 2022, Plaintiff filed his Motion for Jurisdictional Discovery (ECF No. 31),
recasting his arguments opposing Linglong's Motion to Dismiss and "acknowledg[ing] that the
most procedurally appropriate mechanism for requesting jurisdictional discovery is to raise that
request in a formal motion."  (Mem. Supp. Pl. Mot. at 2-3 (ECF No. 32).)  Plaintiff argues that
the alleged contacts establish a "specific and substantive" basis for the Court's jurisdiction
justifying jurisdictional discovery.  (Mem. Supp. Pl. Mot. at 3 (quoting *Gibbs v. Plain Green,
LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018)).)  Plaintiff contends his request does not
constitute a "warrantless fishing expedition," because he has "carefully identified the universe of
companies who likely distributed the Subject Tire, and seeks discovery that is accordingly
specific and limited."  (Mem. Supp. Pl. Mot. at 3.)  Plaintiff concludes, "There is smoke, and
Plaintiff should be allowed to investigate whether there is also a fire." (Mem. Supp. Pl. Mot. at
10.)  Again, Plaintiff did not make its own proffer to support its Motion or rebut Linglong's
evidence.

Linglong responded in opposition on May 13, 2022, arguing that Plaintiff has failed to
allege facts to suggest the possible existence of personal jurisdiction.  (Resp. Opp'n Pl. Mot. at 1
(ECF No. 33).)  Instead, Linglong contends, Plaintiff merely offers "speculation or conclusory
assertions about contacts with a forum state." (Resp. Opp'n Pl. Mot. at 1 (quoting *Jackson v.
Genuine Data Servs., LLC*, 2022 WL 256281, at \*9 (E.D. Va. Jan. 26, 2022)).  Specifically,
Linglong argues that Plaintiff fails to allege any contacts between Linglong and Virginia (Resp.
Opp'n Pl. Mot. at 6-10) or between Mr. Arthurs and Linglong in Virginia (Resp. Opp'n Pl. Mot.
at 15-18) and that the Li Declaration rebuts what little allegations Plaintiff actually made (Resp.
Opp'n Pl. Mot. at 18-19).  Further, Linglong submits that Plaintiff's statement that he sued the

possible universe of tire distributors concedes that he does not know if Linglong has any relevant

Virginia contacts and renders his request for discovery a mere fishing expedition. (Resp. Opp'n

Pl. Mot. at 10-14.)

On May 19, 2022, Plaintiff filed his Reply, attaching, for the first time, evidence in

support of his theory of personal jurisdiction. (ECF No. 36.) Plaintiff argues that the evidence

shows that:

> (1) from 2006 until 2014-2015, Horizon distributed Crosswind tires throughout the
> United States (except for Puerto Rico and Florida), to include Virginia; (2) in late
> 2014 to early 2015, Shandong Linglong and Linglong Americas began competing
> with Horizon's distribution network; and (3) Linglong Americas had to resell a
> significant number of Crosswind tires sometime in 2015. Further, Shandong
> Linglong manufactured the Subject Tire in August—September 2014, and the
> "reasonable time" to deliver such a tire would range anywhere from one month to
> a year.

(Reply Pl. Mot. at 2-6.) Plaintiff contends that this evidence constitutes a specific and

substantive basis to warrant jurisdictional discovery. (Reply Pl. Mot. at 7.)

On May 26, 2022, Linglong moved to strike Plaintiff's evidence (ECF No. 38), arguing

that the Court should not permit Plaintiff to introduce and characterize evidence for the first time

in his Reply. (Mem. Supp. Mot. Strike at 1 (ECF No. 39).) Alternatively, Plaintiff requested the

opportunity to file a Sur-Reply to respond to Plaintiff's proffer. (Mem. Supp. Mot. Strike at 1-

2.) On May 27, 2022, the Court issued an Order (ECF No. 40) denying Plaintiff's request to

strike the evidence and instead docketing Linglong's Sur-Reply (ECF No. 41), rendering this

matter ripe for review.

## II.   LINGLONG'S MOTION TO DISMISS

### A.   Applicable Law

Determinations of personal jurisdiction require a two-step inquiry. First, a court must

find that the long-arm statute of the forum state authorizes the exercise of jurisdiction over a

nonresident defendant. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Then, the court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," a court can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court may exercise specific personal jurisdiction only if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir.

2004).  Here, Plaintiff asserts only specific personal jurisdiction; consequently, the Court will not address general jurisdiction.  (Resp. Opp'n Linglong Mot. at 5.)

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted).  Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

Under the first prong of the test for specific jurisdiction, the Fourth Circuit has enumerated several nonexclusive factors to consider whether a defendant has purposefully availed itself of the forum state, including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns to whether it can exercise personal jurisdiction over Linglong.

**B.    Analysis**

The Court finds that the exercise of personal jurisdiction over Linglong does not comport with the Due Process Clause of the Fourteenth Amendment, because Linglong did not purposefully avail itself of the privilege of conducting business in Virginia.

Plaintiff's claims against Linglong arise from the death of Mr. Arthurs, caused by a defective tire that he drove into Virginia. Although the Complaint alleges various theories of Linglong's connection to the Subject Tire, it fails to allege facts supporting any contacts with

Virginia. Plaintiff only alleges a connection between Linglong and Virginia in paragraph 7b, under the "Parties" section of its Complaint. There, Plaintiff alleges two contacts:

> [1] [Linglong] was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia, including Spotsylvania County, . . . . [and]
> [2] This Court has personal jurisdiction, pursuant to Virginia Code § 8.01-328.1(3)(4)(5), with respect to LINGLONG because CRAIG ARTHURS suffered injuries in Spotsylvania County, Virginia, while using a product in the ordinary course of commerce, trade or use that was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant LINGLONG for use in the Commonwealth of Virginia, including Spotsylvania County.

(Compl. ¶ 7b.)

However, Plaintiff has failed to allege any facts supporting these conclusory statements, and therefore, the Court need not accept these allegations as true. As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (citations omitted)); *see also Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100 at *1 (4th Cir. 2000) (Table Op.) (noting that a court need not "credit conclusory allegations" when deciding whether a plaintiff makes a *prima facie* showing of personal jurisdiction); *Colt Def. LLC v. Heckler & Koch Def., Inc.*, 2004 WL 7350327, at *8 (E.D. Va. Oct. 22, 2004) ("The jurisdictional facts alleged by the plaintiff, however, must not be vague or conclusory, nor may the plaintiff merely extract the language from the Virginia long-arm statute and apply it to the defendant."). Indeed, these boiler plate averments represent precisely the style of pleading that *Twombly* says will not do. 550 U.S. at 555; *see also Orion Cap., LLC v. Promier Prod., Inc.*, 2021 WL 4943501, at *5 (W.D. Va. Oct. 22, 2021) ("Orion simply makes conclusory statements

11

asserting that personal jurisdiction is reasonable.  These scant allegations alone are insufficient to support exercising personal jurisdiction.").

Moreover, Plaintiff does not allege facts supporting application of any of the *Consulting Engineers* factors, which guide the Court's purposeful availment analysis.  *Consulting Eng'rs Corp.*, 561 F.3d at 278.  Indeed, Linglong proffered evidence showing that they do not apply. Linglong is not registered, certified, or licensed to do business in Virginia.  (Li Decl. ¶ 8.) Linglong does not have, and has never maintained, offices in the state of Virginia.  (Li Decl. ¶ 7.) Nor does Linglong own or lease properties, facilities, or offices in Virginia, have assets located there, or have a Virginia phone number.  (Li Decl. ¶¶ 9-11.)  Additionally, regarding the Crosswind 780 LT 235/85R16 line of tires, Linglong did not conduct any business in Virginia related to any Crosswind L780 tire that was imported into the United States in 2014, and did not send its employees to Virginia on business related to any such tire.  (Li. Decl. ¶ 12.)[3]

Once Linglong made this showing, the burden then shifted to Plaintiff to proffer evidence creating a factual dispute on each jurisdictional element, but Plaintiff failed to do so.  *See Indus. Carbon Corp.*, 737 F. Supp. at 926 ("[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the

---

[3]    Plaintiff denigrates the Li Declaration, because it cabins the scope of some of its statements to 2014.  (Resp. Opp'n Linglong Mot. at 9.)  However, Plaintiff's Complaint frames Linglong's conduct almost entirely in terms of its activities before and during 2014.  (Compl. ¶¶ 11-14.)  Accordingly, such attacks wrongly criticize Linglong for failing to rebut allegations that Plaintiff did not make.  Moreover, along these lines, Plaintiff wrongly suggests that Linglong has the burden to "extinguish[] the likelihood that this Court may exercise personal jurisdiction over Linglong."  (Resp. Opp'n Linglong Mot. at 3.)  Rather, "[u]nder Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson*, 816 F.3d at 267.

defendant and on which the defendant has presented evidence."). Indeed, rather than counter with its own evidence, Plaintiff conceded that the majority of its factual allegations against Linglong no longer applied, accepting that Linglong did not exist before March 24, 2014 (*see* Compl. ¶¶ 11-13 (alleging conduct undertaken by Linglong before 2014)), and that Shandong — not Linglong — manufactured the Subject Tire (*see* Compl. ¶¶ 10, 14 (alleging Linglong manufactured the Subject Tire)).[4]

Aside from the dearth of allegations connecting Linglong to Virginia, Plaintiff alleges various ways that Linglong may have connection to the Subject Tire. However, after Plaintiff's concessions to the Li Declaration, and disregarding Plaintiff's conclusory allegations as discussed *supra*, the Complaint's only remaining allegations against Linglong arise in paragraphs 15a and 15b, asserting, in the alternative, a stream of commerce theory:  Sometime before June

---

[4]     Even liberally construing Plaintiff's proffer — from a distinct motion — made in their reply in support of their motion for jurisdictional discovery as responsive to the Linglong Motion and proffer, Plaintiff fails to create any factual dispute on the jurisdictional elements denied by Linglong.  Plaintiff characterizes its proffer as showing that:  "(1) from 2006 until 2014-2015, Horizon distributed Crosswind tires throughout the United States (except for Puerto Rico and Florida), to include Virginia; (2) in late 2014 to early 2015, Shandong Linglong and Linglong Americas began competing with Horizon's distribution network; and (3) Linglong Americas had to resell a significant number of Crosswind tires sometime in 2015.  Further, Shandong Linglong manufactured the Subject Tire in August—September 2014, and the "reasonable time" to deliver such a tire would range anywhere from one month to a year."  (Reply Pl. Mot. at 2-6.)  These facts do not contradict the Li Declaration in any way.  Moreover, they fail to show that Defendant had any contact with Virginia.  Plaintiff invites the Court to make an inferential leap that Linglong distributed tires in Virginia, because it competed with Horizon, who distributed tires in Virginia.  However, such an inference requires the Court to leap over gaps in Plaintiff's evidence — such as that Linglong competed with Horizon in Virginia — which it will not do. *See Combs*, 886 F.2d at 676 (noting that "when . . . the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint . . . . the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," but when the court considers the parties' evidence "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.").

4, 2020, Linglong "placed the Subject Tire into the stream of commerce" and sold it to either Defendant Horizon or the "TBC Defendants" for "the purposes of exporting the Subject Tire by container ship *into the United States*." (Compl. ¶¶ 15a-15b (emphasis added).) However, "[a] prerequisite to the application of the stream of commerce theory is that defendant's product actually be sold, directly or indirectly, in the forum state." *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). It simply proves insufficient for the product to have reached the forum — even had the defendant foreseen the product arriving there — the defendant must have taken some additional targeted conduct directed at the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). Even under Plaintiff's stream of commerce theory, the Complaint utterly fails to allege that Linglong targeted Virginia. Instead, Plaintiff alleges that Linglong targeted the United States. Although the Subject Tire caused injury in Virginia, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the *defendant's* conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (emphasis supplied). And here, Plaintiff has failed to allege any contacts with Virginia, much less meaningful contacts.

The Court's conclusion finds ample support in sister district courts and under controlling precedent. For example, in *James v. Subaru of Am., Inc.*, the plaintiff crashed her vehicle while driving in Tazewell County, Virginia. 433 F. Supp. 3d 933, 936 (W.D. Va. 2020). The plaintiff sustained injuries from a defective airbag and sued the airbag manufacturer DIAM. *Id.* The

court found that it lacked personal jurisdiction over DIAM, where, like here, the defective

product was not manufactured or sold in Virginia, and only arrived there because a nonresident

plaintiff drove it there. *James*, 433 F. Supp. 3d at 941 ("DIAM sold Subaru an airbag component

in Tennessee, the part was placed into a Subaru Outback that was manufactured in Indiana, and

the vehicle was sold to James at a dealership in Florida. The part was present in Virginia because

James brought it to Virginia, not because of any purposeful act of DIAM."); *see also World-*

*Wide Volkswagen Corp.*, 444 U.S. at 287 (holding that an Oklahoma court cannot exercise

personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a

products-liability action, when the defendants' only connection with Oklahoma is the fact that an

automobile sold in New York to New York residents became involved in an accident in

Oklahoma.").

      "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal

jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must

have been so substantial that they amount to a surrogate for presence and thus render the exercise

of sovereignty just." *Consulting Eng'rs Corp.*, 561 F.3d at 277-78 (cleaned up). Linglong has

not made such substantial contacts here. Given the undisputed facts in this case, the Court must

find that Linglong did not purposefully avail itself of the privilege of doing business in Virginia

during the relevant timeframe. Because Plaintiff failed to meet the first prong of the Fourth

Circuit's test for specific personal jurisdiction, Plaintiff's claims against Linglong cannot survive

the Motion to Dismiss. The Court need not address whether this action arose from or related to

any contact between Linglong and Virginia or whether exercising personal jurisdiction over

Linglong would prove constitutionally reasonable.[5]  *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (holding that a court need not consider prongs two and three if plaintiff does not satisfy the first prong).  Thus, the Court lacks personal jurisdiction over Linglong.

## III.   PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

Finally, for much the same reasons, the Court will also deny Plaintiff's Motion for Jurisdictional Discovery.  In both its Opposition to the Motion to Dismiss and its Motion for Jurisdictional Discovery, Plaintiff states that it has sued "the universe of possible distributors" and "[t]here is smoke, and Plaintiff should be allowed to investigate whether there is also a fire." (Resp. Opp'n Linglong Mot. at 10; Mem. Supp. Pl. Mot. at 9-10.)  "Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc.*, 334 F.3d 390 at 402 (citing *Mylan Labs.*, 2 F.3d at 64).  However, at the same time, "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them],'" including whether to grant jurisdictional discovery. *Id.* (quoting *Mylan Labs.*, 2 F.3d at 64).  Courts generally deny requests for jurisdictional discovery when "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," or when the additional information that the plaintiff seeks would not alter the personal jurisdiction analysis. *Id.* at 402-03 (collecting cases).  "Jurisdictional discovery can be appropriate when a plaintiff files a motion containing 'specific and substantive' allegations regarding a court's jurisdiction." *Gibbs*, 331 F. Supp. 3d at 529.

---

[5]    Because the Court finds that Plaintiff has failed on the first prong, its arguments relating to *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) prove inapposite. (Resp. Opp'n Linglong Mot. at 7-8.)  There, the parties agreed that Defendants had contacts with the forum state, but disputed whether a sufficient nexus existed between those contacts and Plaintiff's cause of action. 141 S. Ct. at 1026.  Here, by contrast, the Court cannot address whether Plaintiff's claims arise from or relate to any contacts, because Plaintiff has failed to establish any contacts between Linglong and Virginia.

The Court will deny Plaintiff's Motion, because, as discussed *supra*, it finds that Plaintiff has only alleged speculative and conclusory assertions regarding Linglong's purported contacts with Virginia. Plaintiff has not alleged or submitted any facts showing any relevant jurisdictional contacts between Linglong and Virginia. Plaintiff does not maintain that Linglong designed, marketed, serviced, sold, imported, distributed, and/or manufactured the Subject Tire in Virginia, or directed any agent or representative to do so in Virginia. Additionally, Plaintiff does not allege that Mr. Arthurs had any relevant contacts with Linglong in Virginia. Plaintiff's jurisdictional allegations stand unsupported by facts and thereby prove conclusory and insufficient. (*See* Compl. ¶ 7b (Linglong "[was] doing business throughout the Commonwealth of Virginia, including Spotsylvania County").) Without any factual averments that Linglong targeted Virginia in any way, its allegations that Linglong placed the Subject Tire into the stream of commerce to the United States do not warrant jurisdictional discovery either. *Compare Mya Saray, LLC v. Dabes*, 2018 WL 1161145, at *1-2, 5 (W.D. Va. Mar. 5, 2018) (allowing jurisdictional discovery to pursue stream of commerce theory where foreign defendant had reached out to contact the plaintiff, a Virginia resident, in Virginia), *with Colt Def. LLC*, 2004 WL 7350327, at *17, *19-20 (denying jurisdictional discovery where plaintiff failed to establish a *prima facie* case of personal jurisdiction, alleged nationwide contacts and invalid stream of commerce theory).

As discussed, Plaintiff — for the first time in his Reply in Support of Motion for Discovery — proffers a variety of evidence purporting to establish a "specific and substantial showing to warrant limited jurisdictional discovery." (Reply Pl. Mot. at 10.) The evidence predominantly arises from two 2015 lawsuits in district courts in Ohio and California that involve Linglong. Plaintiff argues that the evidence shows that:

(1) from 2006 until 2014-2015, Horizon distributed Crosswind tires throughout the United States (except for Puerto Rico and Florida), to include Virginia; (2) in late 2014 to early 2015, Shandong Linglong and Linglong Americas began competing with Horizon's distribution network; and (3) Linglong Americas had to resell a significant number of Crosswind tires sometime in 2015. Further, Shandong Linglong manufactured the Subject Tire in August—September 2014, and the "reasonable time" to deliver such a tire would range anywhere from one month to a year.

(Reply Pl. Mot. at 2-6.) Plaintiff contends that "as of late 2014 . . . or by the Spring of 2015 . . . Linglong [was] positioning [itself] to independently distribute Crosswind tires," apart from Horizon, throughout the United States "around the same time that the Subject Tire would likely have been distributed." (Reply Pl. Mot. at 5, 7.) Additionally, Plaintiff attaches screenshots from Walmart and NTB's retail websites to show that any citizen of Virginia could buy a Crosswind tire at their local tire dealership. (Reply Pl. Mot. at 6.)

Far from providing a specific and substantive basis for jurisdictional discovery, Plaintiff's evidence only invites more speculation. The fact that Linglong began competing with Horizon to distribute Crosswind tires does not establish that Linglong distributed Crosswind tires in Virginia. The fact that Linglong sold some Crosswind tires in 2015 does not establish that they did so in Virginia. The fact that a citizen of Virginia can order a Crosswind tire online from Walmart or NTB in May of 2022, when the screenshots were taken, does not establish that they could have done so some years prior, at the time when the Subject Tire was purchased or the time of Plaintiff's accident. Indeed, Plaintiff has even failed to allege who bought the Subject Tire, when they did so, and where. Such crucial information presumably would be within Plaintiff's, or Mr. Arthur's employer's, own records, and obtainable with due diligence. The failure to allege such information only corroborates that Plaintiff did not take seriously his duty to engage in reasonable inquiry before filing suit. *See* Fed. R. Civ. P. 11(b) (requiring signed pleadings be founded upon reasonable inquiry); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)

18

("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (holding a plaintiff must engage in prefiling investigation to develop "some information to support the allegations in the complaint"). Such a conclusion would be warranted alone from Plaintiff's failure to discover that Linglong did not exist until March 24, 2014, before baselessly alleging that it undertook several actions before that date.

Ultimately, the conclusory allegations, lack of factual support and Plaintiff's own filings compel the Court to conclude that Plaintiff's request for discovery amounts to nothing more than a fishing expedition. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."); *Willis v. Marchant*, 2013 WL 12106940, at *2 (W.D.N.C. Feb. 26, 2013), *aff'd,* 521 F. App'x 269 (4th Cir. 2013) ("Litigants are not entitled to discovery fishing expeditions to determine whether a claim exists."); (Mem. Supp. Pl. Mot. at 9 n.5 ("It is Plaintiff's understanding that the universe of possible distributors has been identified and sued here.  Plaintiff simply requests an opportunity to discover which entity actually distributed the Subject Tire."), 10 ("There is smoke, and Plaintiff should be allowed to investigate whether there is also a fire.")).  Because Plaintiff has only offered, at best, "speculation or conclusory assertions" regarding Linglong's contacts with Virginia, *Carefirst of Md. Inc.*, 334 F.3d at 402, and failed to set forth a "specific and substantive" basis for jurisdictional discovery, *Gibbs*, 331 F. Supp. 3d at 529, the Court will not allow Plaintiff to engage in jurisdictional discovery.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Jurisdictional Discovery (ECF No. 31), GRANTS Linglong's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 24) and DISMISSES WITHOUT PREJUDICE all claims by Plaintiff against Linglong.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____ /s/ _____

David J. Novak
United States District Judge

Richmond, Virginia
Dated:  July 6, 2022