IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BENJAMIN ANDREWS,
*as Administrator of the estate of
Craig Ricardo Arthurs*,
    Plaintiff,

v.                                                       Civil No. 3:21cv794 (DJN)

SHANDONG LINGLONG
TYRE CO., LTD., *et al.*,
    Defendants.

## MEMORANDUM OPINION

In June 2020, Maryland resident Craig Arthurs lost control of his truck after one of its tires failed. Mr. Arthurs did not survive the ensuing wreck. Now, Benjamin Andrews, the administrator of Arthurs's estate, asserts claims for negligence and breach of warranty against the tire's foreign manufacturer and several downstream distributors. This matter comes before the Court on Defendants Shandong Linglong Tyre Co. LTD ("Shandong") and Linglong Americas Inc.'s ("Linglong") (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 61.) For the reasons set forth in the Court's July 6, 2022 Memorandum Opinion, (ECF No. 45), and below, the Court will GRANT Defendants' Motion to Dismiss.[1]

---

[1] On August 19, 2022, Defendants TBC Corporation ("TBC") and TBC Brands, LLC ("TBC Brands") (collectively the "TBC Defendants") also moved to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction. (ECF No. 65.) On September 16, 2022, Plaintiff responded, asserting that he "does not oppose the Motion insofar as it requests the TBC Defendants' dismissal without prejudice." (ECF No. 71, at 1.) Accordingly, the Court will also

## I. PROCEDURAL BACKGROUND

On December 17, 2021, Plaintiff sued Defendants Shandong and Linglong, as well as the TBC Defendants, *supra* note 1, and Horizon Tire NJ, LLC ("Horizon"), asserting claims of negligence and breach of the implied warranty of merchantability. (ECF No. 1.) On April 6, 2022, Linglong filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[2] (ECF No. 24.) In that Motion, Linglong, an Ohio-based corporation, argued that Plaintiff failed to establish a legal basis upon which this Court could exercise either general or specific personal jurisdiction. (Mem. Supp. Linglong Mot. (ECF No. 25) at 2–5.) In support, Linglong attached a Declaration by Pingshan Li,[3] detailing Linglong's dearth of contacts with both Virginia and the tire at issue in this case ("the Subject Tire"). (Li Decl. ¶¶ 3–4.)

Plaintiff responded to Linglong's Motion on April 19, 2022, arguing that the Complaint established a *prima facie* showing of personal jurisdiction sufficient to survive Rule 12(b)(2) scrutiny. (Resp. Opp'n Linglong Mot. (ECF No. 27) at 4 (quoting Compl. ¶ 7b).) Specifically, Plaintiff argued that Linglong's contacts with Virginia subjected Linglong to specific personal jurisdiction.[4] (Resp. Opp'n Linglong Mot. at 5.) Further, Plaintiff attacked the Li Declaration

---

GRANT the TBC Defendants' Motion, (ECF No. 65), and dismiss Plaintiff's claims against them without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

[2] Defendant Shandong neither answered nor moved to dismiss Plaintiff's original Complaint. (*See* ECF Nos. 43, 48 (granting Shandong's Motions to Extend Time to File Responsive Pleadings).)

[3] Mr. Li, an attorney and original incorporator of Linglong, serves as its acting secretary and authorized corporate representative. (Li Decl. (ECF No. 25-1) ¶¶ 2–3.)

[4] Plaintiff conceded that the Court did not have general jurisdiction over Linglong. (Resp. Opp'n Linglong Mot. at 5.)

2

for only addressing Linglong's activities during 2014, asserting that the facts presented in the Li Declaration came "nowhere close to extinguishing the likelihood that this Court may exercise personal jurisdiction over [Linglong.]" (Resp. Opp'n Linglong Mot. at 3.) Linglong replied on April 25, 2022. (ECF No. 29.)

In supplement to his Response to Linglong's Motion to Dismiss, Plaintiff moved the Court to permit jurisdictional discovery. (ECF No. 31.) Linglong responded on May 13, 2022, (ECF No. 33), and on May 19, 2022, Plaintiff replied, belatedly proffering evidentiary exhibits in support of his theory of personal jurisdiction, (ECF No. 36). Specifically, Plaintiff alleged that Defendant Shandong "manufactured the Subject Tire in August[ or ]September 2014, and [that] the 'reasonable time' to deliver such a tire would range anywhere from one month to a year." (Reply Pl. Mot. (ECF No. 36) at 2–6.) Further, Plaintiff alleged that:

> (1) from 2006 until 2014-2015, Horizon distributed Crosswind tires throughout the United States (except for Puerto Rico and Florida), to include Virginia;
> (2) in late 2014 to early 2015, Shandong . . . and Linglong . . . began competing with Horizon's distribution network; and
> (3) Linglong . . . had to resell a significant number of Crosswind tires sometime in 2015.

(Reply Pl. Mot. at 2–6.)

On July 6, 2022, the Court denied Plaintiff's Motion for Jurisdictional Discovery and granted Linglong's Motion to Dismiss, finding that neither the conclusory allegations in Plaintiff's original Complaint, nor Plaintiff's assertion that Linglong "placed the Subject Tire into the stream of commerce for the purposes of exporting the Subject Tire by container ship into the United States," established a *prima facie* basis for this Court's exercise of jurisdiction over

3

Linglong.[5] (July 6, 2022 Mem. Op. (ECF No. 45) at 11–14; ECF No. 46.) The Court dismissed Plaintiff's claims against Linglong without prejudice.

On July 25, 2022, Plaintiff filed his Amended Complaint, incorporating the allegations first proffered in his Reply in support of his Motion for Jurisdictional Discovery. (Amend. Compl. (ECF No. 53).) Like his original Complaint, Plaintiff's Amended Complaint presents claims for negligence and breach of the implied warranty of merchantability against all Defendants. (Amend. Compl. at 9, 13.) Plaintiff seeks unspecified damages, interest and costs.

On August 19, 2022, Defendants Shandong and Linglong jointly moved to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction. (ECF No. 61.) Defendants attach the Li Declaration, (Li Decl. (ECF No. 62-3)), as well as the declaration of Jianqin (Lucy) Shi, Director of Sales for North America and the authorized corporate representative of Defendant Shandong, (Shi Decl. (ECF No. 62-2) at 2). In their Motion, Defendants argue that

---

[5] As the Court noted it its Opinion,

> Even liberally construing Plaintiff's proffer . . . made in [his] reply in support of [his] motion for jurisdictional discovery as responsive to the Linglong Motion and proffer, Plaintiff fails to create any factual dispute on the jurisdictional elements denied by Linglong. Plaintiff characterizes its proffer as showing that: "(1) from 2006 until 2014-2015, Horizon distributed Crosswind tires throughout the United States (except for Puerto Rico and Florida), to include Virginia; (2) in late 2014 to early 2015, Shandong Linglong and Linglong Americas began competing with Horizon's distribution network; and (3) Linglong Americas had to resell a significant number of Crosswind tires sometime in 2015. Further, Shandong Linglong manufactured the Subject Tire in August—September 2014, and the "reasonable time" to deliver such a tire would range anywhere from one month to a year." These facts do not contradict the Li Declaration in any way. Moreover, they fail to show that Defendant had any contact with Virginia. *Plaintiff invites the Court to make an inferential leap that Linglong distributed tires in Virginia, because it competed with Horizon, who distributed tires in Virginia. However, such an inference requires the Court to leap over gaps in Plaintiff's evidence — such as that Linglong competed with Horizon in Virginia — which it will not do.*

(July 6, 2022 Mem. Op. at 13 n.4 (emphasis added).)

4

Plaintiff's Amended Complaint merely reasserts the same conclusory allegations and unfounded speculation previously rejected by the Court. (Mem. Supp. Defs.' Mot. (ECF No. 62) at 11–13 (providing comparison chart of Plaintiff's "new" allegations and the Court's July 6, 2022 Memorandum Opinion).) Accordingly, they ask the Court to dismiss Plaintiff's claims with prejudice.

Plaintiff responded in opposition on September 16, 2022. (Resp. Opp'n Defs.' Mot. (ECF No. 70).) In support, Plaintiff attaches a declaration of Horizon Tire's Chief Operating Office, Tom Mills. (Mills Decl. (ECF No. 70-1).) Plaintiff also provides several undated Rejection Notices documenting that Horizon rejected delivery of nonconforming goods from Linglong International Tire Co. in Thailand. (ECF No. 70-2.) Defendants replied on October 6, 2022, (ECF No. 72), rendering the matter ripe for review once more.

As discussed below, the Court agrees that Plaintiff's complaint fails to establish a *prima facie* basis upon which this Court may exercise personal jurisdiction over Shandong or Linglong. Accordingly, the Court will GRANT Defendants' Motion in part and dismiss Plaintiff's claim without prejudice.[6]

## II. RELEVANT LAW AND FACTS

### A. Legal Standard

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation

---

[6] The Court finds that dismissal with prejudice is inappropriate where, as here, the Court did not permit Plaintiff to conduct jurisdictional discovery, and the Court's holding does not reach the merits of Plaintiff's claims. *See Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) ("A dismissal with prejudice is a harsh sanction which should not be invoked lightly.")

5

omitted). If the district court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then the plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), but the district court need not consider only the plaintiff's proof of personal jurisdiction when deciding which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). Rather, "where the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted).

B.  **Factual Background**[7]

Applying the standards set forth above, the Court accepts the following facts from Plaintiff's Amended Complaint and the exhibits supporting the parties' motion papers. On June 4, 2020, Maryland citizen Craig Arthurs was driving a 2001 Ford F350 Super Duty truck through Spotsylvania, Virginia on I-95 when the integrity of the front left tire suddenly failed.[8] (Amend. Compl. ¶¶ 4, 23, 25.) When the tire failed, Mr. Arthurs's Ford lost stability and control, struck

---

[7]  The Court adopts portions of the factual background from its July 6, 2022 Memorandum Opinion largely unchanged.

[8]  Mr. Arthurs worked as a truck driver for a now-defunct Maryland corporation, Divaz Towing, LLC. (Amend. Compl. ¶ 24; ECF No. 62-1.)

another vehicle and collided with a guardrail. (Amend. Compl. ¶ 26.) Mr. Arthurs died at the scene of the crash. (Amend. Compl. ¶ 27.) Plaintiff's claims arise out of this event, and thus, Plaintiff attempts to trace the history of the Subject Tire backwards from the accident on I-95 to its point of origin. Mr. Arthurs purchased the truck, with the left tire already affixed, from Maryland company Divaz Towing several months before the accident. (Amend. Compl. ¶ 24.) But Divaz Towing does not know when, where or from whom it purchased the tire. (*Id.*)

Tracing the Tire downstream from its point of origin provides little additional clarity. Defendant Shandong designed and manufactured the Subject Tire, a Crosswind 780 LT 235/85R16 bearing a Department of Transportation ("DOT") code 0UKL LLTR 3614. (Amend. Compl. ¶¶ 7a, 10.) Shandong manufactured the Crosswind 780 LT 235/85R16 line of tires in Zhaoyuan City, Shandong Province, China.[9] (Amend. Compl. ¶ 13.) Specifically, Shandong manufactured the Subject Tire sometime between August 31, 2014, and September 6, 2014, "for the purposes of exporting the Subject Tire *to the United States*." (Amend. Compl. ¶ 14 (emphasis added).) Shandong did not design the Subject Tire to appeal specifically to Virginia consumers or ship the Tire directly to Virginia. (Shi Decl. ¶¶ 14–15.) Rather, "Crosswind L780 LT 235/85R16 tires manufactured in China through September 2014, . . . were sold and shipped F.O.B. Qingdao, Shandong Province, China[,] or nearby Chinese ports, to Defendant Horizon Tire, Inc." for distribution in the United States, generally.[10] (Amend. Compl. ¶ 15a; Shi Decl.

---

[9] Shandong is headquartered in China and organized under Chinese law. (Amend. Compl. ¶¶ 7a; Shi Decl. ¶ 3.) Shandong is not registered, certified or licensed to conduct business in Virginia. (Shi Decl. ¶ 6.) Shandong does not have, and has never maintained, offices in the Commonwealth of Virginia. (Shi Decl. ¶ 5.) Further, Shandong does not own or lease properties, facilities or offices in Virginia, have assets located here, have a Virginia phone number or have Virginia employees. (Shi Decl. ¶¶ 5–12.) Shandong did not collaborate with any Virginia resident on the design of manufacture of the tire. (Shi Decl. ¶ 14.)

[10] On or around December 1, 2006, Shandong and Horizon entered into a contract in which Horizon became the exclusive distributer of Crosswind Tires. (Amend. Compl. ¶ 11.) The

7

¶ 15.)

Sometime between late 2014 and early 2015, however, Shandong and Horizon's distribution agreement, *supra* note 10, began to erode such that Shandong sought to utilize a United States-based subsidiary, Defendant Linglong, to compete with and replace Horizon's distribution function. (Amend. Compl. ¶ 17.) Linglong, a corporate affiliate of Shandong, maintains its principal place of business in Ohio, where it was incorporated on March 24, 2014. (Amend Compl. ¶ 7b; Li Decl. ¶¶ 4–6.) Like Shandong, *supra* note 9, Linglong is not registered, certified or licensed to conduct business in Virginia. (Li Decl. ¶ 8.) Linglong does not have, and has never maintained, offices in the Commonwealth of Virginia. (Li Decl. ¶ 7.) Nor does Linglong own or lease properties or facilities in Virginia, hold assets located there or have a Virginia phone number. (Li Decl. ¶¶ 9–11.) Additionally, regarding the Crosswind 780 LT 235/85R16 line of tires, Linglong did not conduct any business in Virginia related to any Crosswind L780 tire that was imported into the United States in 2014, and did not send its employees to Virginia on business related to any such tire. (Li. Decl. ¶ 12.) Indeed, from Linglong's incorporation on March 24, 2014, through the end of 2014, Linglong "was outside any stream of commerce that brought Crosswind L 780 tires into the United States generally, or Virginia specifically." (Li Decl. ¶¶ 13–16.)

According to Plaintiff, Defendants' proffer that Linglong played no part in importing Crosswind L780 tires into the United States throughout 2014 is largely irrelevant, because "[a] reasonable time for initial delivery of such a tire would be anywhere from a month to a year, and

---

agreement between Shandong and Linglong contemplated that Horizon would distribute Crosswind tires to "most of the United States," including Virginia. (*Id.*)

. . . full performance would be two years." (Amend. Compl. ¶ 14.) Further, Plaintiff provides the declaration of Tom Mills, the Chief Operating Officer for Defendant Horizon, wherein Mills declares that "Horizon Tire did not provide the subject tire in the distribution in the United States." (Mills Decl. ¶ 4.) Additionally, in May 2015, Horizon rejected a shipment of Crosswind tires manufactured by Linglong International Tire Co. in Thailand and destined for distribution throughout the United States, due to "serious delay, nonconforming goods and lack of bills of lading." (Amend. Compl. ¶ 18; Mills Decl. ¶ 23; Rejection Notice (ECF No. 70-2).) Finally, between 2016 and April 2022, Linglong cosigned ten shipments of tires through the port of Norfolk, Virginia. (Amend. Compl. ¶ 20; Customs Data (ECF No. 53-1) at 2.)

In sum, the uncontroverted facts stand as: Neither Defendant Shandong nor Linglong maintain facilitates, offices or employees in Virginia. Neither entity is licensed to conduct business in the Commonwealth. Defendant Shandong manufactured the Subject Tire in China between August 31, 2014, and September 6, 2014, for the purpose of exporting it to the United States. Shandong then sold and shipped the tire to a downstream distributor with the expectation that the distributor would distribute the tire somewhere in the United States, to possibly include Virginia. Shandong asserts that it sold and shipped the Subject Tire F.O.B. Qingdao, Shandong Province, China, or nearby Chinese ports, to Defendant Horizon Tire, Inc. Horizon contends that it did not, in fact, distribute the tire in the United States, but it makes no denial that it took possession of the tire in China in 2014. In any event, Shandong did not ship the tire to Virginia. Further, at some point after 2014, Linglong likely replaced Horizon as the primary distributor of Crosswind Tires in the United States, but the record contains no evidence or specific allegations that Linglong ever advertised, distributed or sold such tires in Virginia or otherwise intentionally targeted Virginia consumers. Finally, between 2016 and April 2022, Linglong moved ten

9

shipments of tires into the United States through the port of Norfolk, Virginia; however, neither Plaintiff nor Defendants explain to which state the tires were ultimately headed or where they, in fact, ended up.

### III. DISCUSSION

#### A. Applicable Law

As the Court explained in its July 6, 2022 Opinion, when faced with a motion pursuant to Rule 12(b)(2), the Court undertakes a two-step inquiry. First, the Court determines whether the long-arm statute of the forum state authorizes the exercise of jurisdiction over the challenging, nonresident defendant. *Carefirst of Md., Inc. v. Carefirst Pregnancy Cntrs, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Then, the Court evaluates whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, however, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, the Court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). General personal jurisdiction exists when a defendant maintains "continuous and systematic contacts with the forum state, such that [the] defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of*

10

*Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).[11] On the other hand, a court may exercise specific personal jurisdiction if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). As before, Plaintiff asserts only specific personal jurisdiction, and the Court therefore declines to address general jurisdiction.

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted).[12] Under the first prong of the test for specific jurisdiction, the Fourth Circuit has enumerated several nonexclusive factors to consider whether a defendant has purposefully availed itself of the forum state, including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,

---

[11] Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," may a court assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)).

[12] Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982). Plaintiff does not argue that Defendants have somehow waived their right to challenge the Court's exercise of personal jurisdiction.

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three."[13] *Id.*

As discussed below, the Court finds that the exercise of personal jurisdiction over Defendants Shandong and Linglong cannot be reconciled with the Due Process Clause of the Fourteenth Amendment, because Plaintiff fails to plausibly allege that either Defendant purposefully availed itself of the privilege of conducting business in Virginia. Accordingly, the Court's analysis proceeds no further than the first prong. *Id.*

## B. Analysis

The central question is this: based on the facts before the Court, to what extent did Defendants purposefully avail themselves of the privilege of conducting business activities in

---

[13] "The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278–79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477).

Virginia? Upon careful review and due consideration, the Court finds that Plaintiff's Amended Complaint largely repackages the same conclusory allegations and conjecture that this Court previously found insufficient to establish a *prima facie* showing of personal jurisdiction over Defendant Linglong. Likewise, Plaintiff fails to identify or allege adequate, intentional, minimum contacts between Defendant Shandong and Virginia.[14] Accordingly, the Court must grant Defendants' Motion.

### i. Shandong

In his Amended Complaint, Plaintiff plausibly alleges the following relevant facts regarding Shandong:

- Shandong is a foreign corporation engaged in the business of designing, manufacturing, distributing and/or selling tires, including certain Crosswind L780 LT 235/85R16 bearing Department of Transportation (DOT) code 0UKL LLTR 3614.
- On or about August 31, 2014 – September 6, 2014, Shandong manufactured the Subject Tire in China, for the purpose of exporting the Subject Tire to the Unites States.
- Before June 4, 2020, Shandong placed the Subject Tire into the stream of commerce by selling the Subject Tire to one of the Defendant distributors.
- In so doing, Shandong knew that the Defendant distributor would import the Subject Tire, and others like it, into the United States via container ship and distribute them somewhere in the United States, to potentially include Virginia.

(Amend. Compl. ¶¶ 7a, 13–15c.)[15] Conversely, Plaintiff *fails* to allege any facts showing that Shandong "maintains offices or agents" in Virginia, "owns property" in Virginia, "reached into

---

[14] The Court notes that its holding is cabined by the four corners of this case and the deficiencies in Plaintiff's pleadings; the Court makes no determination as to the true scope of either Defendants' contacts with the Commonwealth. *Cf. Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1027–28 (2021) (explaining that when a foreign manufacturer or distributor's business deliberately extends into a forum state, the state may hold those companies responsible for injuries caused within its jurisdiction by defective products and providing examples of such "deliberate extension" including in-forum advertising, broad availability of the company's products throughout the state and attempts to (a) foster connections with in-forum product owners and (b) increase visibility of and revenue from those products).

[15] Insofar as Plaintiff further alleges that Shandong "was authorized to do business in the Commonwealth of Virginia, and doing business throughout the Commonwealth of Virginia,

13

[Virginia] to solicit or initiate business," "deliberately engaged in significant or long-term business activities" in Virginia, is bound by any relevant contract under which it agreed to be governed by Virginia law or any other fact which might guide the Court's *Consulting Engineers* analysis in his favor. *Consulting Eng'rs Corp.*, 561 F.3d at 278. Nevertheless, Plaintiff asks this Court to permit suit against Shandong on the allegation that Shandong manufactured the Subject Tire with the intention that a third-party entity would distribute it *somewhere* in *the United States*. Indeed, at best, Plaintiff's Amended Complaint establishes that Shandong knew that some of its products *might* come to Virginia.[16] But such a threadbare allegation cannot support the inference that Shandong desired, intended or even expected that its product would reach Virginia consumers, let alone that it purposefully cultivated a Virginia market for its products or reasonably anticipated that it would be haled into a Virginia court. *World-Wide Volkswagen Corp.*, 444 U.S. at 295–297. While "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," *Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014), Plaintiff's Amended Complaint is devoid of any allegations that Shandong directed Horizon, Linglong or either of the TBC Defendants to target the Virginia market.

---

including Spotsylvania County," and that the Subject Tire "was designed, serviced, marketed, imported, distributed and/or manufactured by Defendant Shandong for use in the Commonwealth of Virginia, including Spotsylvania County," (Amend. Compl. ¶ 7a), the Court finds that these statements are wholly conclusory and thus unentitled to the presumption of truth. *Bell. Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007). Indeed, these allegations mirror, both in substance and form, allegations proffered by Plaintiff in his original Complaint against Defendant Linglong and rejected by this Court. (Complaint. ¶ 7b; *see* July 6, 2022 Mem. Op. (ECF No. 45) at 11 (opining that "these boiler plat averments represent precisely the style of pleading that Twombly says will not do" (citing *Twombly*, 550 U.S. at 555).)

[16]     Paramount, then, is the Supreme Court's instruction that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State," but instead "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

Plaintiff correctly notes that the Court must draw all reasonable inference in his favor. He then proceeds, however, to demand that the Court undertake a logical grand leap on his behalf. This the Court cannot and will not do.

Plaintiff cites to *Weight v. Kawasaki Motors Corp.*, 604 F. Supp. 968, 969 (E.D. Va. 1985). In *Weight*, the district court found that it had personal jurisdiction over a Japanese motorcycle manufacturer defendant even though the defendant was "neither registered nor licensed to do business in Virginia," "d[id] not maintain an office in Virginia" and shipped all motorcycles via a United States distributor "through ports in states other than Virginia." *Id.* at 969. Central to the *Weight* court's holding, however, were the plaintiff's non-conclusory or speculative allegations that the defendant owned over ninety-six percent of the United States distributor, that at least nineteen retail dealers *in Virginia* who sold the defendant's motorcycles purchased them from the related distributor and that *the defendant "derive[d] substantial economic benefits from the sales of its vehicles" in Virginia.*[17] *Id.* at 970 (emphasis added). Neither Plaintiff's Amended Complaint nor his responsive pleadings offer such additional, particularized allegations. Thus, Plaintiff wholly fails to plead sufficient minimum contacts between Defendant Shandong and the Commonwealth of Virginia such that the former may be fairly said to have purposely availed itself of the privileges and protections of the latter. Accordingly, the Court must grant Shandong's Motion to Dismiss for lack of personal jurisdiction.

---

[17] The case at bar also lacks supporting policy considerations relevant to the *Weight* court's analysis, because the injured party in this case neither purchased the Subject Tire in Virginia nor was himself a Virginia resident. *Cf. id.* at 971 (explaining that "Virginia has an interest in providing a forum for an injured resident to bring an action against a non-resident manufacturer in a products liability action").

### ii. Linglong

The Court declines to rehash its prior findings regarding Plaintiff's conclusory allegations against Defendant Linglong and hereby incorporates the analysis outlined in its July 6, 2022 Memorandum Opinion. (ECF No. 45; *see supra* note 5 (noting that, even considering the allegations and evidence proffered in Plaintiff's Reply in Support of Motion for Jurisdictional Discovery, Plaintiff failed to establish a *prima facie* showing of specific personal jurisdiction as to Defendant Linglong).)

However, the Court acknowledges that Plaintiff's Amended Complaint presents the following wholly new allegation:

- From 2016 until April 2022 Defendant Linglong cosigned ten shipments of tires through the port of Norfolk, Virginia.

(Amend. Compl. ¶ 20; Resp. Opp'n Defs.' Mot. at 3.) Further, Plaintiff now presents the declaration of Tom Mills, avowing that Defendant Horizon did not distribute the Subject Tire in the United States, as Shandong and Linglong insist. (Mills Decl. ¶ 4.)

The central crux of Plaintiff's argument is that, taken together, the totality of his allegations necessitates the inference that Defendant Linglong distributed tires, to potentially include the Subject Tire, in Virginia. But based on the facts before the Court, such an inference strains the bounds of both fair play and reason. As the Court explained previously, "[t]he fact that Linglong began competing with Horizon to distribute Crosswind tires does not establish that Linglong distributed Crosswind tires in Virginia," and "[t]he fact that Linglong sold some Crosswind tires in 2015 does not establish that they did so in Virginia." (Mem Op. at 18–19.) Plaintiff's red-string theory of how and why Defendant *could have* imported the Subject Tire into the United States does not alter this calculus. To the contrary, the Court today affirms its prior

conclusion that although such allegations present "various theories of Linglong's connection to the Subject Tire," they fail to establish "any contacts between Linglong and *Virginia*." (July 6, 2022 Mem. Op. at 10 (emphasis added).)

Turning then to Linglong's recent use of Virginia ports to import ten shipments of tires wholly unrelated to this case, the Court notes two logical shortfalls in Plaintiff's proffer. First, Plaintiff makes no allegation that Linglong intentionally targeted Virginia's ports or desired and derived any benefit from doing so.[18] Second, even if the Court were to assume, *arguendo*, that Linglong's use of Virginia ports between 2016 and 2022 amounted to "significant or long-term business activities in the forum state," this fact fails to alter the Court's conclusion that "Linglong did not purposefully avail itself of the privilege of doing business in Virginia during the relevant timeframe." (July 6, 2022 Mem. Op. at 15.)

Accordingly, for the reasons set forth above, and in the Court's prior Memorandum Opinion, the Court finds that Plaintiff has failed to establish a *prima facie* showing of personal jurisdiction as required by Fed. R. Civ. P. 12(b)(2).

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 61), and DISMISSES WITHOUT PREJUDICE all

---

[18] Indeed, given the variety of freight forwarders and other logistical entities often involved in deciding how a product is shipped from point A to point B, the Court questions whether a bare assertion that a defendant's products moved through a specific port on a handful of occasions may ever qualify as purposeful contacts sufficient to support specific personal jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (explaining that to establish specific personal jurisdiction, a defendant's contacts with the forum state "must be the defendant's own choice and not 'random, isolated, or fortuitous'")).

claims by Plaintiff against Linglong and Shandong.[19]

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                                        /s/
                                          David J. Novak

Richmond, Virginia
Dated: February 13, 2023                 United States District Judge

---

[19] Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff may only amend his Complaint "with the opposing party's written consent or the court's leave." Due to the stage of this litigation, Plaintiff's failure to cure pleading deficiencies despite a prior opportunity to do so and the clear prejudice to Defendant Linglong that would result from having to litigate this issue a third time, the Court warns that further requests to amend Plaintiff's Complaint will be looked upon with extreme disfavor. *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) ("Although leave to amend should 'be freely given when justice so requires,' Fed. R. Civ. P. 15(a), the district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'") (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).